FILED by AW D.C.

Jan 16, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## 25-20014-CR-ALTONAGA/REID
CASE NO. _____

18 U.S.C. § 1343
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(2)(A)

UNITED STATES OF AMERICA

vs.

ANGELO STEPHEN,

    Defendant.

_____/

### INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

1. The United States Small Business Administration ("SBA") was an agency of the executive branch of the Government of the United States. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

#### Economic Injury Disaster Loans

2. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of small business owners who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization and provision of funds to the SBA to provide Economic Injury Disaster Loans ("EIDLs") to eligible

small businesses, including independent contractors and sole proprietors, experiencing substantial financial disruptions due to the COVID-19 pandemic to allow them to meet financial obligations and operating expenses that could have been met had the disaster not occurred. These COVID-19 EIDLs included the possibility of an advance of up to $10,000 for qualifying applicants. The applicant was not obligated to repay this advance.

3.   In order to obtain a COVID-19 EIDL, a qualifying for-profit business was required to submit an EIDL application to the SBA and provide information about its operations, including its gross revenues and number of employees, for the 12-month period preceding January 31, 2020. The applicant also was required to certify under penalty of perjury that all the information in the application was true and correct.

4.   EIDL applications were submitted directly to and processed by the SBA. The amount of the loan approved and any advance provided was determined based, in part, on the information provided in the application concerning the gross revenues, cost of goods sold, and number of employees of the business or individual applying for the EIDL. Any EIDL funds were issued directly by the United States government to the applicant's bank account.

## The Paycheck Protection Program

5.   The CARES Act also authorized forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  In order to obtain a PPP loan, a qualifying business, including a sole proprietorship, submitted a PPP loan application, which was signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP Borrower Application Form

for Schedule C Filers using Gross Income (SBA Form 2483-C), the small business (through its authorized representative) was required to provide, among other things, its: (a) total amount of gross income reported on its Schedule C for either 2019 or 2020; and (b) number of employees. The information on the application and the supporting documentation submitted therewith were used to calculate the amount of money the applicant was entitled to receive under the PPP.

6. The PPP also allowed a qualifying business that had obtained a first draw PPP loan and experienced a required revenue reduction in 2020 to obtain a second PPP loan in 2021. These second PPP loans were also known as "second draw" loans. Starting on or about March 4, 2021, small businesses, including sole proprietorships, that filed an IRS Form 1040, Schedule C, could apply for this second draw loan based on their gross income by using the PPP Second Draw Borrower Application Form for Schedule C Filers Using Gross Income (SBA Form 2483-SD-C) that provided their gross income from either 2019 or 2020 and their number of employees. This second draw application and the supporting documentation submitted were used to calculate the amount of second draw money the applicant was entitled to receive under the PPP.

7. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

**The Defendant and the Relevant Individuals and Entities**

8. Defendant **ANGELO STEPHEN** was a resident of Miami-Dade County, Florida, who at all times relevant to this Information was employed by the Federal Bureau of Prisons as a Correctional Officer.

9. Credit Union 1 was a credit union that did business, including maintaining branches, in the Southern District of Florida.

10. Credit Union 2 was a credit union that did business, including maintaining branches, in the Southern District of Florida.

11. Bank 1 was a bank that did business throughout the United States, including maintaining branches in the Southern District of Florida.

12. The Financial Technology Company operated an online platform that received PPP loan applications from throughout the United States. The Financial Technology Company was not a PPP lender, but rather was a business that received and processed PPP applications for multiple SBA-approved PPP lenders. The Financial Technology Company then would make qualified PPP applications available to one of the lenders that retained its services for the lender's review, final approval, and funding of the PPP loan.

13. Lender 1 was an SBA-approved lender for PPP loans with its headquarters in California. Lender 1's servers were located outside the state of Florida. Lender 1 contracted with the Financial Technology Company to receive PPP applications for funding by Lender 1.

14. Lender 2 was an SBA-approved lender for PPP loans with its headquarters in Texas. Lender 2's servers were located outside the state of Florida. Lender 2 contracted with the Financial Technology Company to receive PPP applications for funding by Lender 2.

15. Bank 2 was a bank that did business throughout the United States, including maintaining branches in Virginia and the Southern District of Florida.

16. Victim 1 was an individual residing in the state of Virginia who maintained an account (the "Victim 1 Account") at Bank 2.

17. Credit Union 3 was a credit union that did business, including maintaining branches, in the Southern District of Florida.

18. Victim 2 was an individual residing in the country of Panama who maintained an account (the "Victim 2 Account") at Credit Union 3.

19. At all relevant times, **ANGELO STEPHEN** maintained accounts at Bank 1, Credit Union 1, and Credit Union 2.

## Wire Fraud
## (18 U.S.C. § 1343)

20. From in or around August 2020, and continuing through in or around July 2023, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ANGELO STEPHEN,**

did knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE SCHEME AND ARTIFICE

21. The purpose of the scheme and artifice was for **ANGELO STEPHEN** to unlawfully enrich himself by using his personal bank and credit union accounts and the United States financial institution system to unlawfully obtain money from numerous victims, including the United States government, PPP lenders, and individual victims, by (1) submitting false and fraudulent EIDL and PPP applications to obtain loan proceeds for his own use and benefit; and (2) participating in fraudulent bank and credit union account takeover activity to unlawfully obtain funds from accounts belonging to Victim 1 and Victim 2 without their consent or knowledge.

## THE SCHEME AND ARTIFICE

The manner and means by which **ANGELO STEPHEN** sought to accomplish the purpose of the scheme and artifice included, among others, the following:

### The EIDL Fraud

22. **ANGELO STEPHEN** submitted to the SBA, via interstate wire communications, a false and fraudulent EIDL application in his own name claiming to be an independent contractor and the 100% owner of a business that did "event planning" and "entertainment services" and had ten employees as of January 31, 2020. **STEPHEN's** fraudulent EIDL application also falsely certified that for the twelve (12) month period prior to January 31, 2020, his business had gross revenues of approximately $62,018 and a cost of goods sold of $0.

23. As a result of this false and fraudulent EIDL application, **ANGELO STEPHEN** obtained from the SBA approximately $20,000 in EIDL loan proceeds. These fraudulently obtained EIDL funds were provided via Electronic Funds Transfer to **STEPHEN's** account at Credit Union 1. This Electronic Funds Transfer involved the use of interstate wire communications.

6

## The PPP Fraud

24. **ANGELO STEPHEN** submitted to the Financial Technology Company, via interstate wire communications, a false and fraudulent PPP first draw loan application (SBA Form 2483-C) claiming to be a sole proprietor operating a business under the tradename "Angelo Stephen." That PPP loan application falsely and fraudulently represented that the business' 2020 gross income was $106,554, and as part of the application process, **STEPHEN** submitted a fraudulent IRS Form 1040 Schedule C for tax year 2020 that included the same false gross income figure. **STEPHEN's** first draw PPP application was then provided by the Financial Technology Company to Lender 1 for final review and funding.

25. As a result of this false and fraudulent application, **ANGELO STEPHEN** obtained approximately $20,833 in first draw PPP loan proceeds from Lender 1 that were electronically deposited by Lender 1 into **STEPHEN's** account at Credit Union 2. This electronic deposit was made via interstate wire communications.

26. **ANGELO STEPHEN** subsequently submitted to the Financial Technology Company, via interstate wire communications, a false and fraudulent PPP second draw loan application (SBA Form 2483-SD-C), again claiming to be a sole proprietor operating a business under the tradename of "Angelo Stephen." This second draw PPP loan application also falsely and fraudulently represented the business' 2020 gross income to be $106,554, and as part of this second draw application process, **STEPHEN** submitted the same false and fraudulent IRS Form 1040 Schedule C for tax year 2020 that was used in the fraudulent first-draw PPP application. **STEPHEN's** second draw PPP application was then provided by the Financial Technology Company to Lender 2 for final review and funding.

27. As a result of this false and fraudulent application, **ANGELO STEPHEN** obtained

7

approximately $20,833 in second draw PPP loan proceeds from Lender 2 that were electronically deposited by Lender 2 into **STEPHEN's** account at Credit Union 2. This electronic deposit was made via interstate wire communications.

### The Account Takeover Frauds

28. **ANGELO STEPHEN** participated in a scheme to fraudulently obtain money from the bank account of Victim 1 through the use of interstate wire communications. **STEPHEN** and his accomplices caused a wire transfer of $20,000 from the Victim 1 Account in Virginia into **STEPHEN's** recently opened account at Bank 2 without the knowledge or consent of Victim 1. Upon receipt of this fraudulent $20,000 wire transfer, **STEPHEN** quickly made numerous large withdrawals and Zelle payments removing all of the stolen $20,000 from his account. This incoming wire transfer containing the stolen $20,000 and the subsequent Zelle payments made by **STEPHEN** all involved the use of interstate wire communications in furtherance of the fraud.

29. **ANGELO STEPHEN** participated in a scheme to fraudulently obtain money from the credit union account of Victim 2 through the use of interstate wire communications. Without the knowledge or consent of Victim 2, **STEPHEN** and his accomplices caused Credit Union 3 to send blank checks for the Victim 2 Account to a new address selected by **STEPHEN** and his accomplices that was unassociated with Victim 2.

30. After the new checks for the Victim 2 Account were fraudulently obtained from Credit Union 3, **ANGELO STEPHEN** cashed one of these checks, made out to "Angelo Stephen" and bearing an account holder signature falsely purporting to be that of Victim 2, in person at a branch of Credit Union 3 in the Southern District of Florida, fraudulently obtaining $8,500 in cash from the Victim 2 Account. This fraudulently obtained check was not issued, signed, or authorized to be issued in any way by Victim 2.

## USE OF WIRES

31.     On or about August 4, 2020, in the Southern District of Florida, and elsewhere, **ANGELO STEPHEN**, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, that is, the electronic transmission of an EIDL application containing false information about the gross revenues of **ANGELO STEPHEN's** business during the twelve (12) month period prior to January 31, 2020, causing a wire transmission from the Southern District of Florida to outside of the State of Florida.

In violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATIONS

1.     The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ANGELO STEPHEN**, has an interest.

2.     Upon conviction of a violation of Title 18, United States Code, Section 1343, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.     Upon conviction of a violation of Title 18, United States Code, Section 1343, relating to any fraud affecting a financial institution, as alleged in this Information, the defendant shall forfeit to the United States any property constituting, or derived from, proceeds obtained,

directly or indirectly, as the result of such offense, pursuant to Title 18, United States Code, Section 982(a)(2)(A).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1).

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

_____
EDWARD N. STAMM
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO.: _____ |
|---|---|
| v. | |
| ANGELO STEPHEN, | **CERTIFICATE OF TRIAL ATTORNEY** |
| _____ / | |
| Defendant. | **Superseding Case Information:** |

**Court Division** (select one)
☒ Miami   ☐ Key West   ☐ FTP
☐ FTL     ☐ WPB

New Defendant(s) (Yes or No) ____
Number of New Defendants ____
Total number of new counts ____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take __0__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I   ☒ 0 to 5 days
   II  ☐ 6 to 10 days
   III ☐ 11 to 20 days
   IV  ☐ 21 to 60 days
   V   ☐ 61 days and over

   (Check only one)
   ☐ Petty
   ☐ Minor
   ☐ Misdemeanor
   ☒ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
16. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

By: _____
Edward N. Stamm
Assistant United States Attorney
FL Bar No.     373826

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** Angelo Stephen

**Case No:** _____

Count #: 1

Wire Fraud

18 U.S.C. § 1343
* Max. Term of Imprisonment: 20 years
* Mandatory Min. Term of Imprisonment (if applicable): N/A
* Max. Supervised Release: 3 years
* Max. Fine: $250,000
* Special Assessment: $100

*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| ANGELO STEPHEN, | ) | |
|  | ) | |
| _Defendant_ | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
_Defendant's signature_

_____
_Signature of defendant's attorney_

_____Juan Berrio, Esq._____
_Printed name of defendant's attorney_

_____
_Judge's signature_

_____
_Judge's printed name and title_